ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| ANDRÉS MIRANDA ROSARIO<br><br>Apelado<br><br>v.<br><br>MUNICIPIO DE AGUADA<br><br>Apelante | TA2026AP00063 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguada<br><br>Caso Núm.: AU2023CV00791<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de abril de 2026.

Comparece ante nos el Municipio de Aguada (Municipio o apelante) y solicita la revocación de la *Sentencia* emitida el 14 de noviembre de 2025 y notificada el día 17 siguiente, por el Tribunal de Primera Instancia, Sala Superior de Aguada (TPI). En el aludido pronunciamiento, el TPI declaró Con Lugar la sentencia sumaria presentada por Andrés Miranda Rosario (señor Miranda Rosario, apelado); DBA A&M Construction (A&M Construction, apelado) y su reclamación en cobro de dinero en contra del Municipio.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

**I.**

El 14 de noviembre de 2023, el señor Miranda Rosario, quien hace negocios como A&M Construction, presentó una *Demanda* por cobro de dinero en contra del Municipio.[1] En síntesis, el demandante alegó que, mediante adjudicación de subasta informal y contrato, el demandado otorgó la suma de $169,449.00 para un proyecto de construcción de panteones de los cuales pagó $142,873.23 y adeuda $26,575.77. El

---

[1] Véase, Entrada Núm. 1, del expediente digital del caso AU2023CV00791 en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

demandante desglosó la cantidad adeudada en las siguientes partidas: 1) $10,700.97 adeudados de la totalidad del balance inicial 2) $15,874.80 que fueron retenidos de los cheques pagados hasta la culminación y aceptación de la obra. Adicional al monto adeudado, el demandante solicitó la cantidad de $4,000.00 y el interés legal sobre el mismo por gastos y honorarios de abogado.

El 8 de enero de 2024, el Municipio presentó su *Contestación a demanda.*[2] En su escrito, el demandado indicó que el contrato abarcaba la construcción de cincuenta (50) panteones. En síntesis, alegó que el demandante quería adjudicarse un panteón adicional, descrito como el panteón número cincuenta y uno (51), sin pagar nada al Municipio.

Tras varias incidencias procesales, el 11 de abril de 2024 se celebró la conferencia inicial. En su *Minuta,*[3] transcrita el 19 de abril de 2024, ambas partes plantearon la controversia sobre la construcción del panteón adicional. Ambas partes acordaron reunirse para examinar documentos y el Tribunal señaló una vista transaccional.

El 13 de mayo de 2024, las partes comparecieron a la vista transaccional. Allí, se comunicó que la oferta de transacción fue rechazada. Así las cosas, mediante *Minuta,*[4] transcrita el día 17 siguiente, el TPI señaló la vista de estado de los procedimientos.

Luego de varias incidencias procesales, el 30 de septiembre de 2024, las partes discutieron lo acontecido hasta el momento en relación con el descubrimiento de prueba. Entre otras cosas, el demandante insistió en que construyó el panteón adicional bajo unas instrucciones que recibió. Por su parte, el Municipio alegó que el demandante pretendía otorgarse el panteón para su propiedad y si el demandante pagaba por el panteón, el Municipio aceptaría el proyecto. Además, el demandado sugirió que se verificara el contrato para luego

---

[2] Entrada Núm. 4, SUMAC-TPI.
[3] Entrada Núm. 8, SUMAC-TPI.
[4] Entrada Núm. 9, SUMAC-TPI.

pasar a la controversia del panteón adicional. Así las cosas, mediante *Minuta* transcrita el 3 de octubre de 2024, el TPI señaló la Conferencia con Antelación al Juicio.[5]

El 15 de noviembre de 2024, la parte demandante presentó *Moción solicitando al tribunal que dicte sentencia sumaria parcial.*[6] Planteó la existencia de una sola controversia jurídica o de derecho: el pago de la partida de $10,700.97 procedentes de fondos gubernamentales. Se amparó en el Artículo VII del contrato suscrito entre las partes y al Artículo 2.109 del *Código Municipal de Puerto Rico* (Código Municipal), 21 LPRA sec. 7331. La moción incluyó una copia del contrato y talonarios sobre el envío de cheques al demandante.

El 18 de diciembre de 2024, el Municipio presentó su oposición.[7] Entre otras cosas, el Municipio reclamó ser el dueño de la obra, explicó su rol en calidad de ello, y esbozó sus facultades respecto al pago de arbitrios de construcción en virtud del Código Municipal.

El 20 de diciembre de 2024, mediante *Orden,*[8] el TPI concedió a las partes hasta el 22 de enero de 2025 para informar al Tribunal la posibilidad de un acuerdo parcial o total.

El 22 de enero de 2025, el señor Miranda Rosario comunicó al Tribunal su aceptación de adquisición del panteón #51, conforme a los costos establecidos por ordenanza municipal.[9]

El 13 de febrero de 2025, ambas partes comparecieron en el escrito intitulado *Moción informando estipulación parcial alcanzada y en cumplimiento de orden.*[10] Allí, las partes describieron el acuerdo alcanzado como sigue:

---

[5] Entrada Núm. 13, SUMAC-TPI.
[6] Entrada Núm. 17, SUMAC-TPI.
[7] Entrada Núm. 21, SUMAC-TPI.
[8] Entrada Núm. 25, SUMAC-TPI.
[9] Entrada Núm. 26, SUMAC-TPI. *Moción Informativa y en cumplimiento de orden.* En esta moción, el apelado incluyó una *Certificación* del cementerio municipal y *Recibo de Recaudador* por el pago de $300.00. Según el escrito, el apelado accedió a que otros $3,200.00 le fueran descontados.
[10] Entrada Núm. 28, SUMAC-TPI.

[…]

2. Conforme a la Ordenanza Municipal Número 34, Serie 2010-2011 el costo del panteón es de $3,200.00 y $300.00 el terreno.

3. Debido a que la parte demandante con fecha del 6 de junio de 2023 realizó el pago de $300.00 por concepto de pago del terreno, las partes han acordado que a este se le descontará la cantidad de $3,200 de la suma de $15,874.80 retenida por el Municipio de Aguada para completar la adquisición del antes mencionado panteón y de ese modo obtener la titularidad de este.

4. Con la presente estipulación parcial las partes ponen fin a la controversia del panteón #51 a los fines de que el Municipio de Aguada proceda con el desembolso de la suma retenida por concepto del 10% de los cheques pagados, una vez se descuente a esta partida el costo del panteón.

[…]

El 14 de febrero de 2025, notificada el 19 de febrero de 2025, el TPI dictó *Sentencia Parcial*.[11] En ella, impartió su aprobación a la estipulación parcial alcanzada por las partes en torno a la controversia sobre el panteón #51.

El 22 de mayo de 2025, las partes comparecieron a la Vista de conferencia con antelación al juicio. En su *Minuta*,[12] transcrita al día siguiente, queda aún por adjudicar el pago de los arbitrios de construcción de la obra. Sobre arbitrios, patente y seguro, el demandante expresó que sometió una cotización por $29,500.00 y que una diferencia de $18,799.00 se la descontaron del pago. Por su parte, el Municipio afirmó ser el dueño de la obra y, en calidad de ello, alegó que es quien paga por los arbitrios de construcción. El Municipio alegó que el demandante cotizó una cantidad de arbitrios mayor a la que tenía que pagar. El TPI solicitó algún documento donde se especifique sobre el

---

[11] Entrada Núm. 29, SUMAC-TPI.
[12] Entrada Núm. 34, SUMAC-TPI.

reembolso. Por estos planteamientos, el TPI concedió a las partes el término de veinte (20) días para informar el curso a seguir en el caso.

Luego de varios trámites procesales, el 14 de noviembre de 2025 y notificada el día 17 siguiente, el TPI emitió su *Sentencia*.[13] En ella, determinó como incontrovertidos los siguientes hechos materiales:

[…]

### HECHOS QUE NO EST[Á]N EN CONTROVERSIA

**Primero**: A la parte demandante le fue adjudicada la Subasta Informal Núm. 6; Serie 2021-2022 el día 13 de junio de 2022 para que este realizara la construcción de panteones Zona C; Sector F; Lote E; del 1 al 50.

**Segundo**: Conforme a la propuesta y al contrato otorgado número 2023-000031, la oferta ofrecida y acogida fue por la suma de $169,449.000.

**Tercero**: El contrato entre las partes número 2023-000031 fue otorgado el 12 de julio de 2022.

**Cuarto**: A la parte demandante se le pagaron tres cheques por las sumas de $93,373.23, $39,240.00 y $10,260.00, para un total de $142,873.23.

**Quinto**: A la parte demandante le fue retenido un 10% de cada uno de los tres pagos realizados, para un total de $15,874.80.

**Sexto**: De la cantidad total que fue adjudicada la subasta a la parte demandante, en adición al 10% retenido, le fue deducida la suma de $10,900.97 [$10,700.97] de la partida de patentes, seguros y arbitrios.

**Séptimo:** La parte demandante pagó la suma de $18,779.03 por concepto de patentes, seguros y arbitrios de construcción.

**Octavo:** El trabajo de construcción fue completado.

[…]

(Énfasis en el original)

Adicionalmente, el TPI declaró CON LUGAR la sentencia sumaria presentada y se ordenó el pago de $10,700.97 retenidos, esto en adición a lo ya determinado en la sentencia parcial dictada el 14 de febrero

---

[13] Entrada Núm. 38, SUMAC-TPI.

de 2025. También, ordenó que el pago se realizara dentro de los primeros treinta (30) días o estarían sujetos a un interés legal del 8.5% anual hasta el saldo total.

Inconforme, el 16 de enero de 2026, el Municipio acudió oportunamente ante nos mediante el presente recurso y planteó la comisión del siguiente error:[14]

> Erró el TPI, al abusar de su discreción al declarar Ha Lugar la Moción de Sentencia Sumaria presentada por la parte demandante-apelada a pesar de que la parte demandante-apelada {demandado-apelante} es el dueño de la obra y es quien reembolsa el gasto por ese concepto porque por ser el dueño de la obra es a quien le corresponde satisfacer dicha partida.

El 21 de enero de 2026, notificado el día 23 siguiente, esta Curia emitió una *Resolución*. Otorgamos treinta (30) días a los apelados para presentar su alegato.

Posteriormente, el 30 de enero de 2026, el demandante incoó ante el TPI una *Moción en solicitud de orden*.[15] Suplicó que se le ordenara a la parte demandada el cumplimiento con el pago dictaminado mediante *Sentencia*.

El 20 de febrero de 2026, la parte demandada contestó la moción anterior.[16] Indicó que la administración municipal está en proceso de producir un documento de aceptación de la obra culminada a ser firmado por el Alcalde del municipio. Explicó que, luego de la producción de dicho documento, el demandante deberá entregar una certificación de deuda del Departamento de Hacienda y una declaración jurada para poder realizar el desembolso de $15,874.80.

Transcurrido el plazo extendido por esta Curia, el señor Miranda Rosario o A&M Construction no comparecieron. Toda vez que apercibimos a los apelados de que, luego del término dispuesto,

---

[14] Véase, Entrada Núm. 1, en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[15] Entrada Núm. 41, SUMAC-TPI.
[16] Entrada Núm. 45, SUMAC-TPI.

dispondríamos del recurso apelativo, procedemos a resolver sin el beneficio de su postura.

**II.**

**A.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, gobierna el mecanismo de la sentencia dictada sumariamente. Esta herramienta procesal sirve al propósito de aligerar la conclusión de los pleitos, sin la celebración de un juicio en sus méritos, siempre y cuando no exista una legítima controversia de hechos medulares, de modo que lo restante sea aplicar el derecho. Véase, *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). De esta forma se propende a la solución justa, rápida y económica de los litigios de naturaleza civil en los cuales no exista una controversia genuina de hechos materiales. *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2021). En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas, supra*, pág. 110. Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

En cuanto a lo que nos compete, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y (2) únicamente podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales; y si el derecho se aplicó de forma correcta. *Vera v. Dr. Bravo,* 161 DPR 308, 334-335 (2004).

A esos efectos, el Tribunal Supremo de Puerto Rico estableció el estándar específico que debemos utilizar como tribunal revisor. En lo pertinente, dispuso que nuestra revisión es de *novo*, en la que examinamos el expediente de la manera más favorable a la parte que se opuso al dictamen abreviado. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118. Al dictar una sentencia sumaria, este tribunal deberá realizar un análisis dual que consiste en: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal; y (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo*, *supra*, pág. 333. Una vez realizado este análisis el tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede. *Id.*, págs. 333-334.

**B.**

El Código Civil define la figura de la *obligación* como "el vínculo jurídico de carácter patrimonial en virtud de la cual el deudor tiene el deber de ejecutar una prestación que consiste en dar, hacer o no hacer algo en provecho del acreedor, quien, a su vez, tiene un derecho de crédito para exigir el cumplimiento". Art. 1060 del Cód. Civil, 31 LPRA sec. 8981. En nuestro ordenamiento jurídico, los contratos son parte de las fuentes de esas obligaciones. Art. 1063 del Cód. Civil, 31 LPRA sec. 8984. Un contrato es un "negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Art. 1230 del Cód. Civil, 31 LPRA sec. 9751. Es norma asentada que, en cuanto a las

obligaciones contractuales, "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". Art. 1233 del Cód. Civil, 31 LPRA sec. 9754; *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024); *S.L.G. Irizarry v. S.L.G., García*, 155 DPR 713, 725 (2001). "El contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa...". Art. 1237 del Cód. Civil, 31 LPRA sec. 9771.

## C.

En nuestra jurisdicción, la Ley Núm. 107-2020, según enmendada, 21 LPRA sec. 7001, *et seq.*, conocida como el *Código Municipal de Puerto Rico* (Código Municipal), faculta a los municipios para la imposición de arbitrios y contribuciones municipales.

En lo concerniente a la controversia de autos y relacionado con los arbitrios de construcción, el Artículo 2.109 (c) del Código Municipal dispone en parte:

> [...]
>
> Para los propósitos de la determinación del arbitrio de construcción, el costo total de la obra será el valor total tomado en cuenta en la adjudicación de la subasta por la agencia contratante, o el precio total establecido en el contrato de construcción en el caso de contrataciones privadas o solicitudes de propuestas, siempre y cuando el Director de Finanzas determine que el precio estipulado en el contrato corresponde razonablemente con el costo promedio por pie cuadrado aceptable generalmente en la industria de la construcción. En la determinación del arbitrio a pagar, únicamente podrá deducirse el costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios, diseños planos, permisos, consultoría y servicios legales. Bajo ningún concepto se podrá reclamar deducciones por interpretación. El arbitrio de construcción aquí autorizado será adicional al pago de patente municipal, aun cuando ambas contribuciones recaigan sobre la misma base contributiva.
>
> [...]

**III.**

En el caso ante nos, el Municipio arguye que el TPI erró y abusó de su discreción al declarar Ha Lugar la petición de sentencia sumaria presentada por el señor Miranda Rosario.

En el caso de autos, el señor Miranda Rosario reclamó el pago de una deuda por la cantidad de $26,575.77, la cual dividió en las siguientes partidas: 1) $10,700.98 adeudados de la totalidad del balance inicial, y 2) $15,874.80 que fueron retenidos de los cheques pagados hasta la culminación y aceptación de la obra. Posterior a la presentación de este recurso, [17] el apelante comunicó al TPI que el desembolso de los $15,874.80 está sujeto a la producción de un documento municipal que está en proceso, a la entrega por parte del apelado de una certificación de deuda del Departamento de Hacienda y de una declaración jurada. Así las cosas, sólo queda por dilucidar si corresponde o no el reembolso de $10,700.98 exigido por el apelado.

Al examinar la solicitud de Sentencia Sumaria presentada por el señor Miranda Rosario, el apelado incluyó una *Cotización* firmada el 27 de mayo de 2022.[18] En el documento se desglosan los gastos del proyecto como sigue:

[…]

a. Costos del proyecto terminado      $135,500.00

b. Gastos patentas, seguros y arbitrios      $29,500.00

c. Gastos honorarios      $4,449.00

**COSTO TOTAL DE PROYECTO**      **$169,449.00**

[…]

(Énfasis en el original)

El señor Miranda Rosario también incluyó la copia del *Contrato de Construcción* suscrito el 12 de julio de 2022 y certificado el día 15

---

[17] Entrada Núm. 45, SUMAC-TPI.
[18] Entrada Núm. 17, SUMAC-TPI. Anejo *Contrato*, pág. 29.

siguiente. El **Gobierno Municipal de Aguada** compareció como "**EL MUNICIPIO**". Por su parte, **A&M CONSTRUCTION DBA ANDR[É]S MIRANDA ROSARIO** compareció como "**EL CONTRATADO**". El Artículo VI del contrato establece lo siguiente:

[...]

### ARTÍCULO VI – FONDOS

"**EL MUNICIPIO**" se compromete a pagar a "**EL CONTRATISTA**" la suma total de **CIENTO SESENTA Y NUEVE MIL CUATROCIENTOS CUARENTA Y NUEVE D[Ó]LARES CON CERO CENTAVOS ($169,449.00)**. --

[...]

(Énfasis en el original)

La partida de $169,449.00 también se muestra en el Artículo VII titulado "Pago del Contrato".[19]

El 22 de mayo de 2025, ante el TPI,[20] el señor Miranda Rosario sostuvo que, como parte de su cotización, sometió la cantidad de $29,500.00 relacionada con arbitrios, patentas y seguro, lo que se apoya en el documento presentado en su petitorio de sentencia sumaria previamente reseñado. El apelado alegó que le descontaron $18,799.00.[21] En esa misma audiencia, el Tribunal solicitó algún documento donde se especifique el reembolso.

Los escritos presentados ante el Tribunal luego de la vista no albergan documentos que acrediten la realización de un pago o cómputos por concepto de arbitrios por parte del Municipio en su función de dueño de la obra como reclama y en virtud del contrato que suscribió con el señor Miranda Rosario. El Artículo 2.109 (c) del Código Municipal, citado ampliamente por ambas partes en sus escritos, impone la realización del pago de arbitrios **previo al comienzo de la obra**. El estatuto anterior

---

[19] *Id.*, págs. 9-10.
[20] Entrada Núm. 34, SUMAC-TPI.
[21] Entradas Núm. 26,28 y 34, SUMAC TPI. La transacción alcanzada con la adquisición del panteón ($300.00 + $3,200.00) y la cantidad retenida en los cheques pagados que el Municipio informó está en proceso de desembolso (15,874.80) suman $18,774.80.

también dispone que "[b]ajo ningún concepto se podrá reclamar deducciones por interpretación".

No surge del expediente reclamación alguna sobre arbitrios **antes** de la culminación de la obra. De los hechos tampoco se desprende la ocurrencia de dilaciones u órdenes de cambio **durante** el proceso de construcción. Ambas partes han establecido que **la construcción de la obra culminó** y así también consta en la octava determinación de hechos de la *Sentencia* apelada. El Municipio no suplió comprobante de pago por arbitrios, por lo que no colocó a este Tribunal en posición de eximirlo de pagarle al señor Miranda Rosario la partida de $10,700.98 que completa los $169,449.00 que surgen como obligación de pago en el contrato por la construcción de panteones en el Municipio de Aguada.

En conclusión, el TPI no erró en su determinación y no abusó de su discreción al disponer de esta controversia mediante el mecanismo de sentencia sumaria.

**IV.**

Por los fundamentos antes expuestos, se confirma la determinación apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones